Lawrence C. Ecoff, Esq. (SBN 143814)
Alberto J. Campain, Esq. (SBN 204068)
**ECOFF LAW, LLP**
280 South Beverly Drive, Suite 504
Beverly Hills, California 90212
Telephone:    (310) 887-1850
Facsimile:    (310) 887-1855
E-mail: ecoff@ecofflaw.com

Robert S. Altagen, Esq. (SBN 5644)
**LAW OFFICES OF ROBERT S. ALTAGEN**
1111 Corporate Center Dr., Suite 201
Monterey Park, California 91754
Telephone: (323) 268-9588
Facsimile: (323) 268-8742
E-mail: rsaink@earthlink.net

Attorneys for Plaintiff
EFT HOLDINGS, INC.,
A Nevada Corporation

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| EFT HOLDINGS, INC., f/k/a EFT BIOTECH HOLDINGS, INC., a Nevada corporation,<br><br>Plaintiff,<br><br>v.<br><br>CTX VIRTUAL TECHNOLOGIES, INC., a Delaware corporation; BUCKMAN, BUCKMAN & REID, INC., a Delaware corporation; CLIFF RHEE, an individual; PETER LAU, an individual,<br><br>Defendants. | Case No.:   2:15-cv-01597<br><br>**COMPLAINT FOR:**<br><br>1.  BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING<br>2.  BREACH OF FIDUCIARY DUTY<br>3.  FRAUD – MISREPRESENTATION<br>4.  FRAUD – CONCEALMENT<br>5.  NEGLIGENT MISREPRESENTATION<br>6.  NEGLIGENCE<br><br>**[DEMAND FOR JURY TRIAL]** |

Plaintiff, EFT HOLDINGS, INC., a Nevada corporation, alleges and avers as follows:

---

1

**COMPLAINT**

**PARTIES**

1.     Plaintiff, EFT HOLDINGS, INC., (hereinafter referred to as "EFT" or "Plaintiff"), is a publicly traded company formerly known as EFT BIOTECH HOLDINGS, INC., and is, and at all times relevant herein was, a corporation formed and existing under the laws of the state of Nevada, but doing business in the State of California at 17800 Castleton Ave., Suite 300, City of Industry, County of Los Angeles, State of California.

2.     Plaintiff is informed and believes, and based thereon alleges, that Defendant CTX VIRTUAL TECHNOLOGIES, INC. (hereinafter referred to as "CTX") is, and at all times relevant herein was, an entity formed and existing under the laws of the state of Delaware, but doing business in the State of California, and with its headquarters at 2385 NW Executive Center Drive, Boca Raton, Florida 33431, and in Ontario, Canada at 2425 Matheson Blvd. East, Mississauga, Ontario, Canada.

3.     Plaintiff is informed and believes, and based thereon alleges, that Defendant BUCKMAN, BUCKMAN & REID, INC. (hereinafter referred to as "BB&R") is, and at all relevant times hereto was, a New Jersey corporation with its principal place of business at 174 Patterson Ave., Shrewbury, New Jersey 07702.  BB&R is a broker/dealer registered with the Securities and Exchange Commission and with FINRA.

4.     Plaintiff is informed and believes, and based thereon alleges, that PETER LAU (hereinafter referred to as "LAU") is, and at all relevant times hereto was, an indirect principal of BB&R, and a member of the Board of Directors of CTX.

5.     Plaintiff is informed and believes, and based thereon alleges, that CLIFF RHEE (hereinafter referred to as "RHEE") is, and at all relevant times hereto was, a principal shareholder and officer of CTX, and a member of the Board of Directors of CTX.  CTX, BB&R, LAU and RHEE are collectively referred to at times as "Defendants."

6.     Each of the Defendants is, and at all relevant times herein mentioned was, an agent, employee, joint-venturer, co-venturer, shareholder, director, officer, co-conspirator, and/or partner of each of the other Defendants, and in doing the things herein described was acting within the scope of its authority as agent, employee, joint-venturer, co-venturer, co-conspirator, shareholder, officer, director and/or partner.

**COMPLAINT**

7.   Plaintiff is informed and believes, and on that basis alleges, that each of the named Defendants participated in, and is in some manner responsible for, the acts described in this Complaint and the damage resulting therefrom.  Plaintiff is further informed and believes, and on that basis alleges, that each of the named Defendants has acted in concert and participation with each other, or with the consent and ratification of the other, concerning each of the claims in this Complaint.

**JURISDICTION AND VENUE**

8.   Jurisdiction is vested in this Court pursuant to 28 U.S.C. 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and is between citizens of this State and citizens or subjects of a foreign state.

9.   Venue is proper in the Central District of California pursuant to 28 U.S.C. 1391, because a substantial part of the events or omission giving rise to the claim occurred within the Central District of California.  EFT has its principal place of business in California.  BB&R maintains its principal place of business in the State of New Jersey, but engaged in continuous and systematic business in California and is believed to be registered and licensed with California as an active brokerage firm.  CTX maintains its principal place of business in the State of Florida, but engaged in continuance and systematic business in California.

10.   Defendants LAU and RHEE are subject to the jurisdiction of this Court.  They have regularly engaged in business in the State of California, and were active participants and parties to the transactions which are the subject of this action.

**COMMON ALLEGATIONS**

*The Investment Opportunity*

11.   EFT operates a multi-level distribution system which promotes and sells its products.  EFT also invests its funds through various forms and transactions.

12.   In or about January 2007, EFT utilized the services of BB&R as its Placement Agent to represent EFT in raising substantial funds for EFT in connection with its own confidential private placement offering.  BB&R was the broker/dealer which prepared the

offering memorandum for EFT, and was instrumental in its financing efforts. Through such relationship, EFT developed a strong working relationship with BB&R, and placed its trust and confidence in BB&R. EFT believed that BB&R would, then and always, act in EFT's best interest.

13.     BB&R is a financial consulting firm and placement agent. BB&R was approached by CTX in or around April 2010 for the purpose of obtaining BB&R's assistance in raising $5 million in financing by way of a "private placement." CTX was looking for a $5 million cash infusion. In connection with its duties and responsibilities as placement agent for CTX, BB&R performed certain due diligence with respect to CTX, which was completed in early June 2010. Such due diligence was performed by, among others, LAU.

14.     On or about June 8, 2010, EFT's Jack Qin and George Curry met at BB&R in New York. BB&R introduced EFT to several potential investment opportunities, one of which was an investment with CTX. EFT was looking for an interest producing asset which would generate cash flow, and not an investment in acquiring stock of a separate company.

15.     In communicating such investment offering to EFT, BB&R's LAU prepared and delivered to EFT a company overview, Confidential Private Placement Memorandum and related offering documents for such an investment with CTX, which were reviewed and approved by RHEE, CTX's officer, director and principal shareholder. Specifically, EFT was presented with a written "Company Overview" which represented that:

(a) CTX manufactures and sells mobile communication and electronic devices and provides technology consulting services. It designs and manufactures cellular telephones, and markets its own proprietary stand-alone virtual keyboards;

(b) Beijing Capitel placed a $45 million order for 200,000 Smartphones incorporating the Smartphone Virtual Keyboard;

(c) Utilizing its proprietary technology, CTX was in the process of developing new product lines; and

(d) 90% of the proceeds from the financing ($4,313,000) would be used for completion of the manufacturing prototype of the virtual keyboard embedded

4

**COMPLAINT**

1    smart phone, which monies would be allocated over a six month period.

2    16.    CTX, through BB&R, also delivered an investment offering circular, which

3    provided as follows:

4    (a) CTX was looking to secure financing of $5,000,000;

5    (b) The proceeds of the financing were to be used for:

6    i.    Development of a module prototype for SMART Virtual

7    Keyboard;

8    ii.    Printed circuit board development;

9    iii.    Software and hardware development; and

10    iv.    Patent IP protection and working capital.

11    17.    CTX further represented that it holds certain patent and trade secret rights relating

12    to various aspects of its technologies, **which were of material importance** to the company and its

13    future prospects. It also intended on becoming a reporting company under the Securities and

14    Exchange Act of 1934, through the filing of the requisite documents with the Securities and

15    Exchange Commission.

16    18.    CTX also provided a Confidential Term Sheet, which stated that a major

17    electronics manufacturer/distributor has committed for $60 million in product purchases (or 2

18    million product units) over 3 years for evoMouse and other products.

19    19.    EFT was preliminarily interested in exploring the opportunity with CTX after its

20    discussion with BB&R in New York.  In connection with EFT's own due diligence, on June 30,

21    2010, BB&R provided EFT with access to its virtual document room ("V-room"), which

22    contained all of the uploaded documents from BB&R relating to CTX.  Specifically, the V-room

23    contained the general and financial information of CTX, including a PowerPoint presentation

24    about CTX, cash flow projections, proforma income statement, Confidential Term Sheet,

25    Company overview, Confidential Private Placement Memorandum, and an investment summary.

26    20.    Then, on July 16, 2010, EFT's management was informed, based upon

27    representations by BB&R's LAU and CTX's RHEE, that:

28    (a) CTX had signed two agreements that would greatly enhance CTX's profits

5

**COMPLAINT**

over the next two years, the first with Beijing Capitel Yongyang Technology Co., Ltd., ... (whereby CTX was expected to net $45 million in sales from 2010-2012), and the second with Lenovo Computers ...(whereby CTX was expected to net $65 million in sales from 2010-2012);

(b) CTX was expected to sign a deal with Hyundai Automotive Group ...worth $135 million in future sales;

(c) CTX's projected net income for 2010 would be $3.3 million and for 2011 would be $5.3 million; and

(d) CTX's annual revenue was $37 million, even notwithstanding the above referenced deals with Beijing Capitel, Lenovo and Hyundai.

21. Based upon the various representations made by CTX and BB&R, both orally by their principals, and in writing, on or about July 23, 2010, EFT decided to enter into the lending opportunity with CTX and wired $5 million to an escrow account to fund the transaction, which was released to CTX on July 26, 2010.

22. The transaction was structured as a Note Purchase Agreement, with 8% Convertible Note, sometimes referred to as a convertible debenture. Pursuant to the Note Purchase Agreement ("NPA"):

(a) Upon conversion of the Note by either EFT or CTX, EFT was entitled to designate one director for the board of directors; and

(b) If CTX did not list its current stock for trading on any of the American Stock Exchange, OTC Bulletin Board or NASDAQ by February 28, 2011, CTX would incur a penalty whereby the number of shares of common stock included in each Unit delivered to EFT would equal 125% of the shares included as part of each Unit.

23. The 8% Convertible Note permitted CTX the ability to convert the entire principal amount then outstanding under the Note into Conversion Units, or stock in CTX, at any time after January 26, 2011. The deadline of February 28, 2011 suggested that the listing of the stock for trading was of paramount importance.

24.     EFT received notice from CTX on March 9, 2011, that CTX was exercising its option under the NPA to convert the note to equity in the form of common stock, whereby after such conversion EFT became one of the largest shareholders of CTX.

25.     To date, over three years after EFT transferred its funds to CTX, CTX is still not traded on any of the American Stock Exchange, OTC Bulletin Board or NASDAQ.  The shares of stock owned by EFT are not freely traded on the open public market.   Moreover, CTX has had several additional rounds of financing which have substantially diluted EFT's shareholder interest in CTX.

### *Discovery of the Fraud*

26.     Beginning on or about August 18, 2014, EFT discovered, for the first time, that the representations made in the CTX Confidential Private Placement Memorandum and offering documents were untrue.  Such discovery came in accordance with other litigation involving the CTX financing transaction.

27.     RHEE and LAU, principals of both CTX and BB&R, respectively, were deposed in a related lawsuit, *EFT Holdings, Inc. v. George Curry, U.S.D.C. Case No. 2:14-cv-02667-GW-CW*.  LAU owns an indirect ownership interest in BB&R, through his company Greenstone Holdings, Inc., and is the Managing Director, Investment Banking, Financial Services for BB&R.  LAU is also a member of the Board of Directors of CTX.  RHEE is an officer, director and principal substantial shareholder of CTX.

28.     LAU was introduced to CTX in April 2010, when CTX was looking for private placement financing.  After his introduction to CTX, LAU began performing due diligence with respect to CTX in order to prepare a private placement memorandum to submit to potential third party investors and financiers, including EFT.   BB&R was responsible for preparing the Confidential Private Placement Memorandum, as well as its related documents.  LAU was the individual at BB&R who was the point person for the transaction, and the person who initially reviewed the materials and decided to take on CTX as a client.

29.     LAU spent very little time performing his due diligence and drafting the Confidential Private Placement Memorandum.   What ordinarily takes 120 days to complete,

**COMPLAINT**

1   LAU completed both the due diligence and the private placement memorandum in 60 days.  He,

2   personally, prepared the Confidential Private Placement Memorandum, which was also reviewed

3   and approved "100%" by RHEE and CTX.  Defendants knew that investors and financiers, like

4   EFT, were relying on the content of the Confidential Private Placement Memorandum in

5   deciding whether or not to participate or fund the financing requested.

6        30.    In the course of his due diligence of CTX, and prior to the preparation of the

7   Confidential Private Placement Memorandum, LAU was informed that:

8             (a) CTX did not own any factories in China, but instead leased its factory.  CTX

9                 had only an option to purchase the factory.  The monies raised from EFT, and

10               others, pursuant to the 2010 Confidential Private Placement Memorandum, was

11               intended to be used to purchase a factory in China, rather than the use of

12               proceeds outlined in the Confidential Private Placement Memorandum and

13               offering materials;

14             (b) CTX did not have any agreements with LG or Hyundai.  CTX had non-binding

15               letters of intent.  In fact, the contract with Hyundai was not even finalized until

16               2013, three years later;

17             (c) With respect to the Beijing Capitel contract, no monies had been received by

18               CTX, and no monies were anticipated until 2015, even though the private

19               placement memorandum represented that the monies were expected to net in

20               2010-2012;

21             (d) CTX did not own Celluon, or even a majority interest in Celluon.  Celluon was

22               owned substantially by RHEE.  The funds from EFT were utilized to purchase

23               RHEE's interest in Celluon, along with the factory in China;

24             (e) Although CTX represented that "a major electronics manufacturer/distributor has

25               committed for $60 million in product purchases (or 2 million product units) over

26               3 years for evoMouse and other products" only some parts were sold and the

27               sales in 2010 alone were insignificant;

ECOFF‖LAW LLP
LAWYERS

(f) The primary patent rights upon which RHEE was the inventor was not filed until the latter part of 2012; and

(g) The financial statements that were included in the V-room were not audited and basically were internally generated by CTX.

31.     Despite being aware of the foregoing information as reflected in paragraph 30, the Confidential Private Placement Memorandum and offering documents contained contrary representations and information, clearly in an attempt to attract and lure potential investors.

32.     In addition, CTX touted its ownership of Celluon as an important part of CTX in the offering documents.   CTX represented that through its majority-controlled subsidiary, Celluon, Inc., CTX markets and sells is proprietary stand-alone virtual keyboard for computers, develops new and innovative mobile communication and electronic devises, and provides technology consulting services. Yet, shortly after receiving EFT's funds, CTX sold Celluon and its factory.   RHEE believed that the Celluon technology *was antiquated*, and sold it to a company, which is now CTX's *largest competitor*.

33.     In fact, and contrary to the depiction of CTX in the offering documents, in 2010, and based upon his review of CTX, LAU consider the company to be a "gamble." The success of the company was based upon whether the virtual keyboard technology breaks through the market.   RHEE, the CEO of CTX, had a vision.   RHEE spent five years developing the technology, and ran out of money, and therefore went to BB&R for additional funding.  LAU believed that *if* CTX's concept was developed and successful, the company would succeed.  He "bet on RHEE" in deciding to assist with the private equity financing raise.   The offering documents, however, portray a much different picture.

34.     Although the Confidential Private Placement Memorandum portrayed a company with strong financials, significant multi-million dollar contracts in place, and the ownership of valuable patents and intellectual property rights, the truth, as revealed in the depositions of RHEE and LAU, was that Defendants were raising monies based upon false representations.

35.     EFT has repeatedly requested information as to the use of the funds received from CTX's private offering.   No such information has been forthcoming.   EFT has also made

1    inquiries as to the status of the SEC filings for CTX to be traded on the open public market.

2    CTX has repeatedly represented, time and again, that it would be completed in a matter of

3    months.

4           36.    As of June 2014, CTX still had not completed its filing of an S-1 in order to

5    obtain registration on the stock exchange.  More than four years after its private placement raise,

6    CTX still had not secured all of the necessary audited financial statements, and habitually failed

7    to get its reporting completed on time.

8

9                        **FIRST CLAIM FOR RELIEF**

10        **BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

11                   **(As Against CTX and RHEE)**

12           37.    Plaintiff hereby incorporates, by this reference, each and every allegation set forth

13    in paragraphs 1 through 36, inclusive, as if set forth in full.

14           38.    There is implied in every agreement, including the Note Purchase Agreement and

15    Convertible Note, a covenant that the Defendants would act in good faith and deal fairly with

16    Plaintiff, and that they would do nothing to interfere with Plaintiff's right to receive the benefits of

17    the Note Purchase Agreement and Convertible Note.

18           39.    Plaintiff is informed and believes, and on that basis alleges, that the Note Purchase

19    Agreement and Convertible Note contained an implied covenant of good faith and fair dealing that

20    CTX would secure and present the necessary filings sufficient for the CTX stock to be openly

21    traded on the stock market, including that owned by EFT.  Such agreements required the

22    Defendants to act in good faith and to engage in fair dealing with the Plaintiff, to deal with it fairly

23    and honestly, and to do nothing to impair, interfere with, hinder or potentially injure its rights.

24           40.    Plaintiff is informed and believes, and on that basis alleges, that Defendant CTX

25    breached the covenant of good faith and fair dealing by, including, but not limited to: (a) failing to

26    obtain all of the necessary audited financial statements in a reasonable period of time; (b) failing to

27    retain the services of competent professionals to prepare the SEC filings for CTX to secure the

28    right to have its stock traded openly on the stock exchange; and (c) failing to act competently and

**COMPLAINT**

1    diligently in securing and processing the necessary documents and submissions for the SEC's

2    consideration such that CTX's stock would be freely traded on the stock exchange.

3        41.    Plaintiff performed all acts, duties and responsibilities required of it to be

4    performed under the Note Purchase Agreement and Convertible Note, except those which were

5    prevented or excused by the Defendant's bad faith conduct.

6        42.    As a direct and proximate cause of the Defendant's breach of the covenant of

7    good faith and fair dealing, Plaintiff has been damaged in excess of two million five hundred

8    thousand dollars ($2,500,000), but according to proof at trial.

9

10                      **SECOND CLAIM FOR RELIEF**

11                      **BREACH OF FIDUCIARY DUTY**

12                      **(As Against BB&R and LAU)**

13        43.    Plaintiff hereby incorporates, by this reference, each and every allegation set forth

14    in paragraphs 1 through 42, inclusive, as if set forth in full.

15        44.    At all times mentioned, Defendants BB&R and LAU, upon whose trust and

16    confidence EFT placed as its representatives and former Placement Agent, owed Plaintiff a duty of

17    good faith and fair dealing, and in connection therewith owed Plaintiff a duty of loyalty and

18    fairness as fiduciaries.

19        45.    In or about June 2010, and continuing through July 2010, BB&R owed EFT a

20    duty to disclose all material information and facts relating to the potential investment by EFT

21    with CTX. BB&R, along with LAU, performed due diligence with respect to CTX, prepared the

22    offering documents, and prepared and provided to EFT the Confidential Private Placement

23    Memorandum, Confidential Term Sheet and Company Overview. BB&R and LAU were aware

24    of the false statements and inaccuracies contained in the offering documents, but failed to

25    disclose them.

26        46.    Defendants BB&R and LAU, therefore, breached their fiduciary duty of good

27    faith, care, and loyalty owed to EFT by: (a) preparing false and inaccurate offering documents

28    for CTX, and representing them to be accurate, including the Company Overview, Confidential

1 Term Sheet and Confidential Private Placement Memorandum; and (b) failing to disclose the

2 false, inaccurate and misleading information in the Company Overview, Confidential Term

3 Sheet and Confidential Private Placement Memorandum.

4      47.     As a direct and proximate result of the aforesaid breach of fiduciary duty by

5 Defendants, and each of them, Plaintiff has been damaged in excess of two million five hundred

6 thousand dollars ($2,500,000), but according to proof at trial.

7

8                          **THIRD CLAIM FOR RELIEF**

9                          **FRAUD - MISREPRESENTATION**

10                         (As Against All Defendants)

11      48.     Plaintiff hereby incorporates, by this reference, each and every allegation set forth

12 in paragraphs 1 through 47, inclusive, as if set forth in full.

13      49.     Beginning in or about June 2010, Defendants, collectively, prepared certain

14 offering documents intended to present to third parties to secure private financing for CTX.  The

15 documents included, among else, a Company Overview, Confidential Term Sheet, and private

16 placement memoranda (collectively the "Offering Documents").  Additional documents were

17 prepared, and uploaded into a V-room for potential investors, like EFT, to review in consideration

18 as to whether to enter into an investment opportunity with CTX.

19      50.     The Offering Documents were prepared by LAU and BB&R, for and on behalf of

20 CTX, and reviewed, approved and authorized by RHEE and CTX.

21      51.     Beginning in or about June 2010, and continuing through July 2010, BB&R and

22 CTX provided the Offering Documents to EFT for EFT to review.  BB&R and CTX represented

23 that the information contained within the Offering Documents, which was prepared by LAU and

24 reviewed, approved and authorized by RHEE, was truthful and accurate.

25      52.     The Offering Documents prepared by Defendants represented that:

26           (a)     Beijing Capitel placed a $45 million order for 200,000

27                   Smartphones incorporating the Smartphone Virtual Keyboard;

28           (b)     90% of the proceeds from the financing ($4,313,000) would be

used for completion of the manufacturing prototype of the virtual keyboard embedded smart phone, which monies would be allocated over a six month period;

(c) CTX held certain patent and trade secret rights relating to various aspects of its technologies, *which were of material importance* to the company and its future prospects;

(d) CTX intended on becoming a reporting company under the Securities and Exchange Act of 1934, through the filing of the requisite documents with the Securities and Exchange Commission;

(e) a major electronics manufacturer/distributor has committed for $60 million in product purchases (or 2 million product units) over 3 years for evoMouse and other products;

53. Then, on July 16, 2010, EFT's management was verbally informed, based upon verbal representations by BB&R's LAU and CTX's RHEE, that:

(a) CTX had signed two agreements that would greatly enhance CTX's profits over the next two years, the first with Beijing Capitel Yongyang Technology Co., Ltd., ... (whereby CTX was expected to net $45 million in sales from 2010-2012), and the second with Lenovo Computers ...(whereby CTX was expected to net $65 million in sales from 2010-2012);

(b) CTX was expected to sign a deal with Hyundai Automotive Group ...worth $135 million in future sales;

(c) CTX's projected net income for 2010 would be $3.3 million and for 2011 would be $5.3 million; and

(d) CTX's annual revenue was $37 million, even notwithstanding the above referenced deals with Beijing Capitel, Lenovo and Hyundai.

54. EFT, in providing funds for the financing of CTX, relied upon such

13

**COMPLAINT**

1    representations as truthful and accurate.   In so doing, EFT's reliance was reasonable and

2    justifiable under the circumstances.   CTX was represented by a believed reputable broker/dealer,

3    BB&R, who was instrumental in raising funds for EFT.   EFT had placed its trust and confidence

4    in BB&R, and therefore had no reason to believe that the representations as made, and as set

5    forth above, were false or inaccurate.   Had EFT known, or otherwise been informed, that the

6    representations made orally and in the Offering Documents were false or untrue, EFT would

7    have never provided the funds in connection with CTX's private placement financing.

8           55.     The representations by CTX and BB&R, however, as set forth in paragraphs 52

9    and 53 above, were materially false and misleading.   In truth,

10                          (a)     CTX did not own any factories in China, but instead leased its

11                                  factory.   CTX had only an option to purchase the factory.   The

12                                  monies raised from EFT, and others, pursuant to the 2010 private

13                                  placement, was intended to be used to purchase a factory in China,

14                                  rather than the use of proceeds outlined in the Confidential Private

15                                  Placement Memorandum and Offering Documents;

16                          (b)     CTX did not have any agreements with LG or Hyundai.   CTX had

17                                  non-binding letters of intent.   In fact, the contract with Hyundai

18                                  was not even finalized until 2013, three years later;

19                          (c)     With respect to the Beijing Capitel contract, no monies had been

20                                  received by CTX, and no monies were anticipated until 2015, even

21                                  though   the   Confidential   Private   Placement   Memorandum

22                                  represented that the monies were expected to net in 2010-2012;

23                          (d)     CTX did not own Celluon, or even a majority interest in Celluon.

24                                  Celluon was owned substantially by RHEE.   The funds from EFT

25                                  were utilized to purchase RHEE's interest in Celluon, along with

26                                  the factory in China;

27                          (e)     Although CTX represented that "a major electronics manufacturer/

28                                  distributor has committed for $60 million in product purchases (or 2

14

**COMPLAINT**

million product units) over 3 years for evoMouse and other products" only some parts were sold and the sales in 2010 alone were insignificant;

(f)    The patents and technology that was touted as important in the Offering Documents was, in fact, considered antiquated and therefore sold to a competitor;

(g)    The primary patent rights upon which RHEE was the inventor was not filed until the latter part of 2012;

(h)    Although CTX projected a $3.3 million net income for 2010, CTX actually reflected a loss of almost $6.5 million, or more than a $10 million dollar swing; and

(i)    Although CTX projected a $5.3 million net income for 2011, the financials for CTX were restated in 2013, which reflected a loss of $985,982.

56.    As a direct and proximate result of Defendants' fraud and deceit, Plaintiff has been damaged in excess of two million five hundred thousand dollars ($2,500,000), but according to proof at trial.

57.    Defendants' conduct, as alleged herein, was intentional, malicious, oppressive, and despicable, thereby entitling Plaintiff to an award of punitive and exemplary damages, all according to proof at trial.

## FOURTH CLAIM FOR RELIEF

### FRAUD - CONCEALMENT

### (As Against All Defendants)

58.    Plaintiff hereby incorporates, by this reference, each and every allegation set forth in paragraphs 1 through 57, inclusive, as if set forth in full.

59.    Plaintiff is informed and believes, and based upon such information and belief

1   alleges, that Defendants are extremely knowledgeable and experienced in the preparation and

2   importance of private placement memoranda and documents provided in connection with private

3   financing.

4         60.     Plaintiff further is informed and believes, and based upon such information and

5   belief alleges that the Defendants knew, or should have known, that investors, like EFT, would

6   rely upon the accuracy of private placement memorandum and offering documents in deciding

7   whether or not invest or fund investments, and that all material information would be disclosed to

8   potential investors.

9         61.     Plaintiff is informed and believes, and based upon such information and belief

10  alleges, that Defendants were aware of the following:

11

12        (a)     CTX did not own any factories in China, but instead leased its

13                factory.  CTX had only an option to purchase the factory;

14        (b)     The monies raised from EFT, and others, pursuant to the 2010

15                private placement, were intended to be used to purchase a factory

16                in China, rather than the use of proceeds outlined in the private

17                placement memoranda and Offering Documents;

18        (c)     CTX did not have any agreements with LG or Hyundai.  CTX had

19                non-binding letters of intent;

20        (d)     With respect to the Beijing Capitel contract, no monies had been

21                received by CTX, and no monies were anticipated until 2015, even

22                though   the   Confidential   Private   Placement   Memorandum

23                represented that the monies were expected to net in 2010-2012;

24        (e)     CTX did not own Celluon, or even a majority interest in Celluon.

25                Celluon was owned substantially by RHEE.  The funds from EFT

26                were intended to be utilized to purchase RHEE's interest in

27                Celluon, along with the factory in China;

28

**COMPLAINT**

(f)     Although CTX represented that "a major electronics manufacturer/ distributor has committed for $60 million in product purchases (or 2 million product units) over 3 years for evoMouse and other products" only some parts were sold and the sales in 2010 alone were expected to be insignificant;

(g)     The patents and technology that was touted as important in the Offering Documents were, in fact, considered antiquated; and

(h)     The primary patent rights upon which RHEE was the inventor were not filed.

62.     Plaintiff is informed and believes, and based upon such information and belief alleges, that Defendants intended to conceal the true facts relating to CTX, and further knew that there was a strong likelihood that such deception would not be discovered by unsuspecting and unwitting investors and financiers.

63.     Plaintiff is informed and believes, and based on such information and belief alleges, that Defendants owed a duty to EFT to disclose all material facts.  Yet, the Defendants failed to make the disclosures as set forth in paragraph 61.

64.     At all relevant times prior to transferring monies to CTX, EFT was unaware that of the facts set forth in paragraph 61.

65.     Plaintiff is informed and believes, and based upon such information and belief alleges, that Defendants intentionally failed to disclose, concealed, and actively suppressed from EFT their knowledge about the facts set forth in paragraph 61.

66.     Plaintiff is informed and believes, and based upon such information and belief alleges, that Defendants' failures to disclose and suppressions of information were made with the intent to induce EFT to act in the manner alleged, in reliance thereon, and to cause EFT to transfer

1   monies and fund CTX's private financing.

2       67.     At the time EFT tendered its monies to escrow on behalf of CTX, EFT was

3   ignorant of the suppressed and non-disclosed facts, which were beyond EFT's knowledge.

4       68.     Had EFT known the actual facts, EFT would not have entered into the transaction

5   and Note Purchase Agreement.

6

7       69.     As a direct and proximate result of Defendants' fraud and deceit, and the alleged

8   concealments and non-disclosures, Plaintiff has been damaged in excess of two million five

9   hundred thousand dollars ($2,500,000), but according to proof at trial.

10      70.     Defendants' conduct, as alleged herein, was intentional, malicious, oppressive,

11  willful, wanton and despicable, thereby entitling Plaintiff to an award of punitive and exemplary

12  damages, all according to proof at trial.

13

14                          **FIFTH CLAIM FOR RELIEF**

15                       **NEGLIGENT MISREPRESENTATION**

16                          **(As Against All Defendants)**

17      71.     Plaintiff hereby incorporates, by this reference, each and every allegation set forth

18  in paragraphs 1 through 47, inclusive, as if set forth in full.

19      72.     The representations, promises, inducements and concealments of Defendants,

20  individually and on behalf of BB&R and CTX, as alleged herein above were in fact false, and

21  made without any intention of performing them.

22      73.     Plaintiffs are informed and believe, and thereon allege, that at the time of making

23  the representations, inducements, and concealments, Defendants had no reasonable grounds for

24  believing them to be true.

25      74.     Defendants intended that EFT rely on these representations, inducements, and

26  concealments in deciding whether to enter into the financing transaction for the benefit of CTX.

27      75.     EFT reasonably relied on Defendants' representations, inducements, and

28  concealments in providing monies to CTX and financing under the terms of the private

**COMPLAINT**

1  placement offered by CTX through BB&R.

2       76.    EFT was harmed as a result of Defendants' representations, inducements, and

3  concealments, and EFT's reliance on same was a substantial factor in causing the harm alleged

4  herein.

5       77.    As a direct and proximate result of Defendants' conduct, as alleged above,

6  Plaintiff has been damaged in excess of two million five hundred thousand dollars ($2,500,000),

7  but according to proof at trial.

8

9  **SIXTH CLAIM FOR RELIEF**

10  **NEGLIGENCE**

11  **(As Against CTX)**

12       78.    Plaintiff hereby incorporates, by this reference, each and every allegation set forth

13  in paragraphs 1 through 47, inclusive, as if set forth in full.

14       79.    CTX, in its private finance offering, represented that it would undertake all efforts

15  necessary to submit the requisite documents to become a publicly traded stock on any of the

16  American Stock Exchange, OTC Bulletin Board or NASDAQ.  Indeed, even in the Purchase Note

17  Agreement and Convertible Note, CTX would suffer a penalty if the CTX stock was not trade-able

18  by February 28, 2011.  EFT's stock was not freely traded on the public stock market without the

19  necessary SEC submissions and approval.

20       80.    CTX had a duty to EFT to act diligently, and in good faith, to make sure that the

21  necessary professionals were retained, and the requisite documents provided, to submit to the

22  SEC for CTX to secure the ability for its stock to become a publicly traded stock on any of the

23  American Stock Exchange, OTC Bulletin Board or NASDAQ.

24       81.    EFT is informed and believes and based thereon alleges that CTX has failed to

25  retain the services of the necessary professionals, and provide the requisite documents, to satisfy

26  the SEC in its required filings to enable CTX's stock to be openly traded on the stock market.

27  CTX has failed and refused to provide the necessary attention, and was negligent in failing to do

28  so, such that after four years since the funding of CTX's private placement, EFT's shares are not

**COMPLAINT**

1  freely traded on the open public market.

2      82.    As a direct and proximate result of Defendants' conduct, as alleged above,

3  Plaintiff has been damaged in excess of two million five hundred thousand dollars ($2,500,000),

4  but according to proof at trial.

5

6      **WHEREFORE**, Plaintiff EFT Holdings, Inc. prays for judgment against the Defendants,

7  and each of them, as follows:

8                         **ON THE FIRST CLAIM FOR RELIEF**

9      1.    For monetary damages in excess of two million five hundred thousand dollars

10  ($2,500,000), but according to proof at trial.

11                        **ON THE SECOND CLAIM FOR RELIEF**

12      2.    For monetary damages in excess of two million five hundred thousand dollars

13  ($2,500,000), but according to proof at trial.

14

15                        **ON THE THIRD CLAIM FOR RELIEF**

16      3.    For monetary damages in excess of two million five hundred thousand dollars

17  ($2,500,000), but according to proof at trial.

18      4.    For punitive and exemplary damages according to proof at trial;

19                        **ON THE FOURTH CLAIM FOR RELIEF**

20      5.    For monetary damages in excess of two million five hundred thousand dollars

21  ($2,500,000), but according to proof at trial.

22      6.    For punitive and exemplary damages according to proof at trial;

23                        **ON THE FIFTH CLAIM FOR RELIEF**

24      7.    For monetary damages in excess of two million five hundred thousand dollars

25  ($2,500,000), but according to proof at trial.

26      8.    For punitive and exemplary damages according to proof at trial;

27                        **ON THE SIXTH CLAIM FOR RELIEF**

28      9.    For monetary damages in excess of two million five hundred thousand dollars

ECOFF|LAW LLP
LAWYERS

**COMPLAINT**

1  ($2,500,000), but according to proof at trial.

2  ## AS TO ALL CAUSES OF ACTION

3      10.    For costs of suit incurred herein;

4      11.    For such other and further relief as the Court deems just, necessary and proper.

6  Dated:  March 4, 2015         Robert S. Altagen, Esq.
                       LAW OFFICES OF ROBERT S. ALTAGEN

8                         ECOFF LAW, LLP

10                         LAWRENCE C. ECOFF, ESQ.

11                         ALBERTO J. CAMPAIN, ESQ.

12                         Attorneys for Plaintiff

13                         EFT HOLDINGS, INC.,
                       A Nevada Corporation

16  ## DEMAND FOR JURY TRIAL

    Pursuant to the Federal Rules of Civil Procedure and the Local Rules of the United States

18  District Court, Central District of California, Plaintiff hereby demands a trial by jury.

19  Dated:  March 4, 2015         Robert S. Altagen, Esq.
                       LAW OFFICES OF ROBERT S. ALTAGEN

20                         ECOFF LAW, LLP

23                         LAWRENCE C. ECOFF, ESQ.
                       ALBERTO J. CAMPAIN, ESQ.

25                         Attorneys for Plaintiff
                       EFT HOLDINGS, INC.,

26                         A Nevada Corporation

*(left margin, vertical)* ECOFF|LAW LLP  LAWYERS

COMPLAINT