UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 15-1597-GW(CWx) | Date | June 2, 2016 |
|---|---|---|---|
| Title | *EFT Holdings, Inc. v. CTX Virtual Technologies, Inc., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | Myra Ponce | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Rachel L. Stein | Dick P. Sindicich, Jr. |
| Lawrence C. Ecoff | Theodore C. Peters |

**PROCEEDINGS:** **DEFENDANT BUCKMAN, BUCKMAN & REID'S MOTION TO COMPEL ARBITRATION AND STAY LITIGATION [60]**

Court hears oral argument. The Tentative circulated and attached hereto, is adopted as the Court's Final Ruling. Defendant's Motion is DENIED. The Court lifts the stay and sets a scheduling conference for June 9, 2016 at 8:30 a.m. Parties will file a scheduling report by noon on June 7, 2016.

Plaintiffs' oral request to place certain documents under seal is GRANTED; a list will be provided to the court clerk forthwith.

|  | : | 10 |
|---|---|---|
| | Initials of Preparer | JG |

*EFT Holdings, Inc. v. CTX Virtual Techs., Inc., et al.*, Case No. 2:15-cv-01597-GW-CW
Tentative Ruling on Motion to Compel Arbitration and Stay Litigation

Buckman, Buckman & Reid, Inc. ("BBR") and Peter Lau (collectively "Defendants") move to compel arbitration and stay this litigation brought by plaintiff EFT Holdings, Inc., f/k/a EFT Biotech Holdings, Inc. ("Plaintiff").  A court's obligation in response to such a motion is to first determine whether an agreement to arbitrate between the parties actually exists.  *See Ashbey v. Archstone Prop. Mgmt.*, 785 F.3d 1320, 1323 (9th Cir. 2015).  In doing so, a court employs "state-law principles that govern the formation of contracts." *Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217 (9th Cir. 2008).  Here, the proffered arbitration agreement in question – found within a brokerage account Customer Agreement establishing RBC CM as Plaintiff's clearing broker (but which is *not* an agreement *between* Plaintiff and BBR), *see* Buckman Decl., Exh. A (Docket No. 60-2) – reads, in pertinent part, as follows:

> 14. ARBITRATION.  I AGREE THAT ALL CONTROVERSIES THAT MAY ARISE BETWEEN ME, MY INTRODUCING BROKER, <u>AND</u> RBC CM, OR ANY OF RBC CM'S AFFLIATES [*sic*], EMPLOYEES OR AGENTS, CONCERNING ANY TRANSACTION(S), OR THE CONSTRUCTION, PERFORMANCE, OR BREACH OF THIS OR ANY OTHER AGREEMENT BETWEEN ME AND RBC CM PERTAINING TO SECURITIES AND OTHER PROPERTY, WHETHER ENTERED INTO PRIOR, ON OR SUBSEQUENT TO THE DATE HEREOF, SHALL BE DETERMINED BY ARBITRATION.  ANY ARBITRATION UNDER THIS AGREEMENT SHALL BE CONDUCTED PURSUANT TO THE FEDERAL ARBITRATION ACT AND THE LAWS OF THE STATE OF MINNESOTA BEFORE AN ARBITRATION PANEL APPOINTED BY THE FINANCIAL INDUSTRY REGULATORY AUTHORITY… AND IN ACCORDANCE WITH THE RULES OF FINRA.

*Id.*, ¶ 14, at pg. 6 of 13 (emphasis added).[1]  On April 28, 2016, this Court issued an order asking the parties to address, by way of reference to Minnesota law (the law governing the agreement in which the arbitration provision is found), the importance of the word

---

[1] The parties agree that "I" and "ME" as used in the arbitration provision refer to Plaintiff and that "MY INTRODUCING BROKER" refers to BBR.  "RBC CM" is RBC Correspondent Services, a division of RBC Capital Markets, LLC.  *See* Buckman Decl., Exh. A, at pg. 5 of 13.  RBC CM is not a party to this litigation.

"AND" in the phrase "BETWEEN ME, MY INTRODUCING BROKER, AND RBC CM," or to explain why the Court should not rely upon Minnesota law in addressing that issue.[2] With the parties now having done so, the Court sees no reason to address either the question of arbitrability or the question of whether Defendants – particularly BBR – can even enforce the arbitration agreement as either a party to or intended third-party beneficiary under the agreement in question. This is because Plaintiff has the much better argument on the question of whether there is an agreement in the first place – there is no arbitration agreement concerning controversies between just BBR and Plaintiff.

From the supplemental briefing, it is now clear that, for Defendants to prevail on this motion, the word "AND" either has to be applied in some manner other than the conjunctive purpose both parties admit it serves, or it has to be replaced – in some form, though not necessarily in the same place in the arbitration provision – with the word "OR" or with the natural meaning of that word. *See* Docket No. 76, at 2:10-12, 2:17-19; Docket No. 78, at 3:3-5, 5:18-19.[3] As Plaintiff has explained in its own supplemental briefing, such an approach would contravene several different principles of contract law under Minnesota law.

Where contractual language is clear and unambiguous, it is interpreted according to its plain, ordinary sense, not skewed so as it means its exact opposite. *See Carlson v. Allstate Ins. Co.*, 749 N.W.2d 41, 45 (Minn. 2008); *Indep. Sch. Dist. No. 877 v. Loberg Plumbing & Heating, Co.*, 123 N.W.2d 793, 800 (Minn. 1963). Even taking Defendants'

---

[2] No one attempted in the supplemental briefing to argue that something other than Minnesota law should be consulted.

[3] For the assertion that this is an appropriate result under Minnesota law, Defendants rely upon *Pipe Crooner Corp. v. Ryan Constr. Co.*, 1990 Minn. App. LEXIS 944 (Minn. Ct. App. Sept. 21, 1990) for its statement that "[a]lthough the word 'and' generally has a conjunctive meaning, the Minnesota Supreme Court has recognized that the terms 'and' and 'or' may be substituted for one another to carry out the parties' obvious intention." *Id.* at *3. As Plaintiff notes, however, *Pipe Crooner* cannot be cited as precedent. *See* Minn. Stat. Ann. § 480A.08(3)(c) ("Unpublished opinions of the Court of Appeals are not precedential."). In addition, in the limited analysis offered in that case, the appellate court simply concluded that there was an "obvious purpose and intent" of the agreement in question. *See Pipe Crooner*, 1990 Minn. App. LEXIS 944, at *3. This Court cannot say that, in this case, there is an "obvious purpose and intent" in connection with the operation of the arbitration agreement such that the agreement's plain language should be interpreted directly contrary to that plain language. *See also First & Am. Nat'l Bank of Duluth v. Higgins*, 293 N.W. 585, 592 (1940) ("The word 'and' may be read as 'or' where that was the testator's intention. There must be some expression in the will which makes it clear that the meaning and intention of the testator requires the transposition . . . . There is no expression of intention here other than that which is to be found in the words themselves. Hence there can be no justification for substituting the word 'or' for the word 'and'.").

position that words should also be "construed in their plain and fair sense rather than their technical sense," Docket No. 78, at 4:16-17 (citing *Mutual Serv. Cas. Ins. Co. v. Wilson Twp.*, 603 N.W.2d 151, 153 (Minn. Ct. App. 1999)), the Court sees nothing "plain and fair" about interpreting "AND" to mean "OR," or something akin thereto.  In addition, interpreting "AND" to mean "OR," besides being fundamentally counterintuitive, would lead to a sizable overlap – if not render completely superfluous – the follow-on clause governing controversies *just between EFT and RBC CM* (discussed further below).  But, as EFT points out, contracts are supposed to be interpreted in a way that gives all provisions meaning.  *See Current Tech. Concepts, Inc. v. Irie Enters., Inc.*, 530 N.W.2d 539, 543 (Minn. 1995); *Indep. Sch. Dist.*, 123 N.W.2d at 799-800 (characterizing as a "cardinal rule of construction" that "any interpretation which would render a provision meaningless should be avoided on the assumption that the parties intended the language used by them to have some effect").

Defendants argue that it is absurd to think that RBC CM – which both parties appear to concede drafted the arbitration provision (and the overarching agreement in which it is found) – would have crafted an arbitration provision that required BBR to be a participant in any dispute before a matter could be sent to arbitration.  There are, as the Court sees it, two responses to that concern.  First, it ignores the fact that there is a second set of disputes that fall within the arbitration provision – one that includes *only* disputes between EFT and RBC CM: "OR THE CONSTRUCTION, PERFORMANCE, OR BREACH OF THIS OR ANY OTHER AGREEMENT <u>BETWEEN ME AND RBC CM</u> PERTAINING TO SECURITIES AND OTHER PROPERTY."  Buckman Decl., Exh. A, ¶ 14, at pg. 6 of 13 (emphasis added).  Second, if RBC CM had meant something other than the simple conjunctive, it is exceedingly strange that they selected the word "AND," as opposed to "AND/OR" or "OR."  Indeed, if RBC CM is surprised by this assessment of the provision, a fix of that agreement going forward would be simple.

For the foregoing reasons, the Court concludes that Defendants have not demonstrated the existence of an arbitration agreement reaching disputes only between Plaintiff and BBR.  As such, the Court denies Defendants' motion.